Ben **GRALAPP** and Lelia Gralapp,
Plaintiffs,

v.

**UNITED STATES** of America,
Defendant.

James **WATSON** and Marcella Watson,
Plaintiffs,

v.

**UNITED STATES** of America,
Defendant.

Civ. A. Nos. W–3942, W–3943.

United States District Court,
D. Kansas.

Sept. 22, 1970.

Roberts & Roberts, Winfield, Kan., J. W. Bullion, P. M. McCullough, Thompson, Knight, Simmons & Bullion, Dallas, Tex., for plaintiffs.

Robert J. Roth, U. S. Atty., Bernard V. Borst, Asst. U. S. Atty., Wichita, Kan., Brian B. Denton, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## DECISION OF THE COURT

THEIS, District Judge.

The above actions were consolidated for trial and arose under the Internal Revenue Code of 1954, 26 U.S.C.A. § 1, et seq. The cause was submitted to the Court upon stipulated facts, briefs of the parties, and without formal hearing. On the basis of those facts, and after a careful reading of the briefs of the parties and the applicable law, the Court finds as follows.

As a preliminary matter, it is noted that the Court is vested with jurisdiction over the subject matter and the parties.

The following facts were agreed upon by the parties:

In 1960, effective as of June 1st of that year, plaintiffs Ben Gralapp and James Watson, and one Joe Everly, sold all their interests in four oil and gas leases located in Cowley County, Kansas, to the Everett Oil Company. As his part of the consideration of the sale, plaintiff Ben Gralapp received, in 1960, cash in the amount of $52,000 and a promissory note, due on January 5, 1961, in the amount of $187,500. Plaintiff James Watson received, in 1960, as his share of the consideration, $35,000 in cash and a promissory note, due January 5, 1961, in the amount of $125,000. In addition, it was agreed that Everett would pay, as a contingent supplemental consideration, in six even annual installments, a sum equal to 48% of the present net worth of the future net revenue coming from any production which might accrue from the four leases *after* there had been produced from such leases a total of 495,852 barrels of oil.

The stated amount of 495,852 barrels of oil production was reached during 1965. In accordance with the terms of the agreement mentioned above, a determination was made on November 3, 1965, that additional consideration in the amount of $549,986 was owing to the

sellers. Payment of the additional consideration was made by a cash payment of $91,664.34 on May 1, 1966, and execution of promissory notes in the amount of $420,701.66 on June 21, 1966, to plaintiffs Gralapp and Watson, and Everly. The promissory notes were non-interest-bearing, and were secured by mortgages and assignment of oil runs on the leased properties. The total additional consideration paid reflected a discount of $37,620 from the total amount of $549,986 determined on November 3, 1965, to account for payment of the notes over a three and one-half year period, rather than the six-year period specified in the initial contract between the parties. Payments were made in various amounts during 1966, 1967 and 1968 in satisfaction of the promissory notes referred to above. The notes were completely retired on September 1, 1968.

The plaintiffs, Ben and Lelia Gralapp and James and Marcella Watson, reported the cash payments received in 1960 and 1961, and 1966, 1967 and 1968, on the installment basis of reporting, pursuant to 26 U.S.C.A. § 453. The tax returns for the plaintiffs Gralapp and Watson showed gross profit percentages, as are provided for under 26 U.S.C.A. § 453, of 96.6694 and 9983.75, respectively, which were to be applied against the consideration as it was received. In 1960, plaintiffs received both notes and cash; however, only the percentage of profit as it related to the cash received was reported on the plaintiffs' 1960 return. The income from the promissory notes was reported in 1961 using the same percentages, respectively, as were computed and used in 1960. However, the percentage shown on plaintiffs' 1960 returns in their election of the installment basis was not utilized in reporting the income received in 1966, 1967 and 1968, when cash was received under the 48% contingent consideration arrangement.

Upon auditing these returns of the plaintiffs, the Commissioner of Internal Revenue determined that the plaintiffs were not entitled to report the proceeds of the sale on the installment method because no stated sales price existed or was ascertainable. The Commissioner determined that the entire gain on the sale should be reported in the year 1960, with the gain on the sale computed by valuing the contingent additional consideration at zero. The sale was treated by the Commissioner as an open transaction such that the additional 48% contingent consideration was to be reported as capital gain when received. As a part of the assessment of income taxes due the Government on the entire transaction, the Internal Revenue Service added to the plaintiffs' income for 1960 the fair market value of the promissory notes received, and refunded the taxpayers the tax paid in 1961 by them that had resulted from the inclusion of the paid-up notes in their respective income for that year.

As a result, plaintiffs Ben and Lelia Gralapp paid additional taxes in the amount of $50,867.58, and interest in the amount of $18,368.99 for the year 1960; and plaintiffs James and Marcella Watson paid additional taxes for that year in the amount of $32,548.37, and interest in the amount of $11,643.08. Plaintiffs then filed claims for refund of the taxes and interest above referred to, which were denied. These suits were then instituted by plaintiffs to recover the additional income tax and interest which they paid.

The parties herein have agreed that the sole issue before this Court is whether the plaintiffs may report the sale of their oil interests on an installment basis, as is provided for under 26 U.S.C.A. § 453, or whether the sale does not qualify under that section because at the time of the sale the total contract price could not be determined. The Court now addresses himself to that issue.

■ The purpose of Section 453 of the Internal Revenue Code is to permit the spreading of the tax over the period of the payments. Commissioner of Internal Revenue v. South Texas Co., 333 U.S. 496 at 503, 68 S.Ct. 695, 92 L.Ed. 831 (1948), 2 Mertens, Law of Federal Income Taxation, Ch. 15, p. 2. Thus, in transactions

involving the sale of realty or the casual sale of personalty where there will be two or more payments made, the installment method of reporting may be used, but only if in the year of sale there were no payments received, or if the payments received in the year of the sale did not exceed 30% of the selling price. 26 U.S. C.A. §§ 453(b) (1) and (b) (2). A taxpayer who qualifies for and elects to use the installment method provided for in 26 U.S.C.A. § 453 does so by following the statutory formula, i. e., he determines the ratio of gross profit realized on the sale to the total contract price, and then applies the percentage to the installment payments which he receives each year. The resulting figure is then reported as income by the taxpayer. 26 U.S.C.A. § 453(a) (1).

What is important here, and what impresses the Court, is that the statute contemplates a definite and readily ascertainable "total contract" or "selling" price, which, for purposes of law suits such as the present one, are one and the same figure. 2 Mertens, Law of Federal Income Taxation, Ch. 15, p. 46. Such a figure is indispensable in order to utilize the formula provided in the statute: it is necessary in determining the "gross profit," the percentage, and also in determining whether or not the transaction complied with the 30% limitation. All this is evident from the wording of the statute itself, and from the cases concerning this statute which have come to the Court's attention. See e. g., C.I.R. v. Brown, 380 U.S. 563, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965), where the transaction carried a selling price of $1,300,000; Blackstone Realty Co. v. C.I.R., 398 F.2d 991 (5th Cir. 1968), selling price of $340,000; Lipman's Estate v. United States, 376 F.2d 455 (6th Cir. 1967), selling price of $54,000; Riss v. C.I.R., 368 F.2d 965 (10th Cir. 1966), selling price of $5,806,000; and Tombari v. C.I.R., 299 F.2d 889 (9th Cir. 1962), selling price of $300,000.

▬ In the instant case, the selling price at the time of the sale was not fixed, and therefore was not determina-ble, due to the contingent 48% arrangement. It is this deficiency, i. e., lack of a definite selling price, which makes it necessary for this Court to hold on the submitted issue that the plaintiffs may not report the sale on an installment basis, as is provided for under 26 U.S. C.A. § 453.

As further bolstering this Court's opinion that Section 453 is unavailable to these taxpayers, it has been said that the installment method of reporting income is an exception to the general rule by allowing one who qualifies to postpone the tax in the year of sale of the capital asset. See Commissioner of Internal Revenue v. South Texas Co., supra, relative to purpose of § 453 as a tax relief measure. Since § 453 is a relief provision and its literal terms are very specific and detailed, its requirements have been strictly construed. The courts have required taxpayers to show that they qualify for the exemption privilege in the year of sale. Cappel House Furnishing Co. v. United States, 244 F. 2d 525 (6th Cir. 1957); Riss v. Commissioner of Internal Revenue, supra. This the plaintiffs have failed to do here, since this Court rejects and can find no interpretable basis whatsoever for plaintiffs' contention that Section 453 contemplates a "minimum" sale price which they contend is the presently ascertainable consideration for the sale, i. e., the sum of the cash and promissory notes.

Having determined that an ascertainable sale price is an essential element of Section 453 of the Code, it becomes necessary to complete disposition of this case to determine whether the assessment made by the Government should stand.

▬ When a taxpayer fails to qualify under Section 453, the general rule will apply. The general rule is set forth in 26 U.S.C. § 61, where the gain on the sale of property is taxed in the year of sale, which gain includes cash plus the fair market value of any property received. Such a method of assessment is set forth in Treasury Regulations on Income Tax, § 1.453–6(a) (2),

and is commonly termed the "deferred payment method."

In Riss v. Commissioner of Internal Revenue, supra, the Tenth Circuit has stated that where the taxpayer fails to meet the requirements of Code Section 453, the deferred payment method is the proper one to use. In the *Riss* case, where the Court was considering whether the cancellation of a seller's debt by the purchaser was part of the selling price, the Court stated (368 F.2d p. 970):

> "Because the taxpayer has failed to meet the requirements of § 453 for reporting gain on the sale by the installment method, he must treat the sale as a deferred payment transaction. For the purpose of determining taxable gain on the transaction, Astor's contract to pay the Riss family $1,100,-000 in monthly installments for eleven years must be assigned a fair market value at the time of sale. If Astor's $1,100,000 obligation had no market value, then payments received by the taxpayer would be reported and taxed in the year in which they were actually received."

Here, the plaintiffs' unauthorized method of accounting—actually a hybrid of the installment method and the deferred payment method—in practice, allowed them to utilize the advantages of the installment method by not having to report the fair market value of the notes received in the year of sale. On the other hand, since the contingent consideration which eventually resulted in payments of $513,366, had no ascertainable value in the year of sale, they received the advantages of the deferred payment method by not having to include that in the computation of the gross profit percentage.

Such an application of accounting practices to obtain a tax advantage not accorded other taxpayers in similar transactions, and which will not result in clearly reflecting income, is forbidden by both congressional holding (26 U.S.C. § 446) and by judicial ruling, as reflected by Commissioner of Internal Revenue v. South Texas Co., supra, where the Supreme Court said (333 U.S. p. 503, 68 S.Ct. p. 700):

> "There is no indication in any of the congressional history, however, that by passage of this law Congress contemplated that those taxpayers, who elect to adopt this accounting method for their own advantage could by this means obtain a further tax advantage denied all other taxpayers, whereby they could, as to the same taxable transaction, report in part on a cash receipts basis and in part on an accrual basis."

On the basis of the foregoing opinion of the Court, it is held that the gain on the sale of the oil leases was properly adjusted and determined by the Commissioner of Internal Revenue. Judgment shall accordingly be entered for the defendant including the cost of this action.

It is so ordered.