Ben GRALAPP and Lelia Gralapp, Plaintiffs-Appellants.

v.

UNITED STATES of America, Defendant-Appellee.

James WATSON and Marcella Watson, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 704-70.

United States Court of Appeals, Tenth Circuit.

May 1, 1972.

---

P. M. McCullough, Dallas, Tex. (J. W. Bullion, Dallas, Tex. on the brief), for plaintiffs-appellants.

Ann Belanger, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Elmer J. Kelsey, and Stephen H. Hutzelman, Attys., Tax Div., Dept. of Justice, and Robert J. Roth, U. S. Atty. of Counsel, on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, PHILLIPS, Circuit Judge, and McWILLIAMS, Circuit Judge.

LEWIS, Chief Judge.

These are tax refund suits, consolidated for trial and appeal, wherein taxpayers seek recovery of income tax and interest in the sum of $113,428.02 paid for the taxable year ending December 31, 1960. The trial court denied recovery, 319 F.Supp. 265, and the decision of the court below details in great part the stipulated and determinative facts which we deem unnecessary to restate except as generalizations. We affirm, but in so doing do not accept as an absolute the ruling below, or the position of the government, that a taxpayer cannot properly elect in any instance to report on an installment basis the proceeds

of a sale received on a contract having an open end selling price. So, too, we must reject the claim of taxpayers to an absolute right to the privilege of installment reporting simply based on the fact that less than 30% of the minimum selling price is received during the first year and which must remain less than 30% if the open end contingency materializes.

■ In the case at bar taxpayers sold, in 1960, their respective interests in designated oil and gas leases for a sum certain received in 1960 and promissory notes payable the following year. The contract of sale provided for a "contingent additional consideration," in the amount of 48% of the estimated future net revenues, which estimate was to be made and discounted to the then present value only if and when total production from the leases had reached 495,852 barrels of oil.[1] This amount was reached in 1965, the estimate was then made, and the amount of the contingent additional consideration was determined to be $512,366. A cash payment was made in 1966 and promissory notes were executed and payment made thereunder in 1966, 1967 and 1968 in satisfaction of the notes. The taxpayers reported the cash payments received in 1960 and 1961, and in 1966, 1967 and 1968 on the installment basis of reporting, pursuant to 26 U.S.C. § 453.

The taxpayers' election to report under the installment method contains no element of deliberate write off because nearly 100% of each amount received by them was fully taxable in the year received. However, the value of the contingency under the sales agreement here considered is by no means de minimus as an element of actual sales price and, as the parties have stipulated, could not be specifically determined until the eventuality occurred and *could not be valued before that time*. This peculiarity which we emphasize dictates the conclusion that in 1960 it was impossible to

determine the total contract price and therefore impossible to calculate the ratable portion of each payment which represented gain under installment payments.

The judgment is affirmed for the reasons stated by the trial court except as qualified by the views expressed herein.

ORIE L. PHILLIPS, Circuit Judge, (concurring).

I agree with the result reached in the opinion of Chief Judge Lewis and fully concurred in by Judge McWilliams, However, there is one qualification in that opinion with which I disagree, if I correctly understand its import. As I read such qualification, it means that a taxpayer who enters into a contract for the sale by him of personal property, which provides for a specified cash down payment and the further payment of a definite amount in a year or years subsequent to the year of sale, is not always barred from returning such cash and such definite deferred payments as installments in the year in which they are received, simply because the contract also provides for the payment of an additional consideration which is to be based on the facts of future events when they have occurred, and the amount of which cannot be determined until such facts have occurred, and thus the contract has what is commonly called an open-end selling price.

Hence, I will undertake to state in this concurring opinion the basis on which I understand the Commissioner determined the deficiencies against Gralapp and Watson, herein involved, and the basis on which the trial court sustained the assessment of such deficiencies, with all of which I fully agree.

The facts stipulated by the parties and found by the trial court are these:

On June 1, 1960, Gralapp, Watson, and one Joe Everly were the owners of $\frac{9}{16}$ths of the working interest in four oil and gas producing leases on land in

---

1. That this was a sale of a separate asset was apparently raised early in the suit, but was not pursued and was not raised on appeal.

Cowley County, Kansas. Their respective interests were: Gralapp—¾₆ths; Watson—¾₆ths; and Everly—¾₆ths.

On June 24, 1960, effective June 1, 1960, they executed a document entitled "Partial Assignment of Oil and Gas Leases and Agreement With Respect Thereto" and delivered it to the Everett Oil Company, hereinafter referred to as Everett.

The assignment in part here pertinent read:

"CONSIDERATION AND CONTINGENT ADDITIONAL CONSIDERATION.

"1.1 Assignors acknowledge receipt from Everett of the sum of ONE HUNDRED FORTY THOUSAND DOLLARS ($140,000.00) cash in hand paid to them for the Conveyed Interests * * *. Each of the Assignors hereby acknowledges receipt of his pro rata share of such cash consideration.

"1.2 As additional consideration for the Conveyed Interests Everett has delivered to Assignors, respectively, its promissory notes payable * * * on January 5, 1961, * * * to the order of Assignors, respectively, as follows:

Gralapp     $187,500.00
Everly       187,500.00
Watson       125,000.00

each of said notes bearing interest at the rate of three per cent (3%) per annum.

"1.3 As additional consideration (hereinafter referred to as 'Contingent Additional Consideration') for the Conveyed Interests, Everett agrees to pay to Assignors, respectively, in the proportions:

Gralapp     37.5%
Everly      37.5%
Watson      25%

a further sum determined as hereinafter provided and subject to the provisions hereof. If and when there shall have been produced, from and after the Effective Date and prior to the

expiration of twenty-one (21) years after the date hereof, from the lands described in Exhibit A and attributable to the Conveyed Interests a total of 495,852 barrels of oil, the parties hereto shall cause an estimate of the then economically recoverable reserves of oil attributable to the Conveyed Interests to be made by a mutually acceptable qualified petroleum reservoir evaluation engineer or firm of engineers designated by Assignors and Everett. The future net revenue of such economically recoverable reserves as determined by such engineer or engineers shall then be discounted at the rate of six per cent (6%) per annum compounded annually and Everett shall be obligated to pay to Assignors as the Contingent Additional Consideration an amount equal to 48% of such discounted future net revenue in six (6) annual installments as herein provided. Everett shall pay to Assignors ⅙ of the Contingent Additional Consideration six (6) months after determination of the amount of the Contingent Additional Consideration, and the balance of the Contingent Additional Consideration shall be payable to Assignors in five (5) equal annual installments which shall be due and payable, respectively, on the first, second, third, fourth and fifth anniversary date of such first installment. * * *."

Upon the execution and delivery of such assignment, Gralapp and Watson received cash and promissory notes in proportion to their respective interests, as follows:

|          | Cash    | Notes     |
|----------|---------|-----------|
| Gralapp  | $52,500 | $187,500  |
| Watson   | 35,000  | 125,000   |

The notes were paid in full in 1961, according to their tenor.

The contingent additional consideration could not be determined under the terms of the assignment until 495,852 barrels of oil "attributable to the Con-

veyed Interests" had been produced from the leases. That amount of production was reached in 1965.

Thereafter, on November 3, 1965, in accordance with the terms of the assignment, the future net revenue of the economically recoverable reserves was determined and discounted, as provided in the assignment; and 48 per cent of such discounted net revenue was $549,986 and was the amount of additional consideration due the assignors.

Payment of such additional consideration to Gralapp, Everly, and Watson was made as follows:

1. Cash on May 1, 1966—$91,664.34;
2. Execution and delivery to the assignors of promissory notes on June 21, 1966, in the aggregate amount of $420,701.66.

Such consideration, so paid, reflected a discount of $37,620 from $549,986, due to the fact that the notes were payable over a three and one-half year period, instead of the six year period specified in the assignment. The notes were fully paid on September 1, 1968.

On their federal income tax returns, Ben and Lelia Gralapp reported as income in 1960, 96.6694 per cent of the $52,500 cash received by them in 1960, and reported as income in 1961, 96.6694 per cent of the $187,500 payments on the notes received by them in 1961. The additional contingent consideration was reported as income during the years 1966, 1967, and 1968, in the amount of the cash payments received in each of those years, respectively.

On their federal income tax returns, James and Marcella Watson reported as income in 1960, 99.8375 per cent of the $35,000 cash received by them in 1960, and reported as income in 1961, 99.8375 per cent of the $125,000 cash payments on the notes received by them in 1961. The additional contingent consideration was reported as income received in the years 1966, 1967, and 1968, in the amount of the cash payments received in each of those years, respectively.

Upon auditing such returns for 1960 and 1961, the Commissioner of Internal Revenue determined that the Gralapps and Watsons were not entitled to report the proceeds of the sale received in those years, respectively, on the installment method, because the entire sales price was not then fixed or stated, and was not ascertainable. The Commissioner determined that the amounts received in 1960 and 1961 should be reported in 1960, as follows: The gain was to be calculated by adding the cash received and the fair market value of the notes (payable in 1961) received in 1960, and subtracting from this total the taxpayers' basis in the leases. The Commissioner further held that the additional consideration, payable when and if oil production exceeded 495,852 barrels, should be given no value in that computation; that the sale should be treated as an open-end transaction; and that the additional consideration should be reported as capital gain when received, and assessed deficiencies accordingly. This method of assessment is commonly known as the "deferred payment method." See Treasury Regulations on Income Tax (1954 Code), § 1.453–6(a)(2). As a result of these assessments, the taxpayers were assessed, and paid, the following additional taxes:

|  | Tax | Interest |
|---|---|---|
| Gralapp | $50,867.58 | $18,368.99 |
| Watson | 32,548.37 | 11,643.08 |

Ben and Lelia Gralapp and James and Marcella Watson each filed timely claims for refunds of the amounts, which claims were denied by the Commissioner. They then instituted the instant suits, which were consolidated for trial. The trial court held that since the selling price at the time of the sale was not fixed, and was not determinable, due to the contingent additional consideration, the taxpayers were not entitled to elect the installment method of reporting gain. Judgment was entered accordingly, and this is an appeal therefrom.

26 U.S.C.A. § 453, as amended by § 3(a), Act of August 31, 1964, Pub. Law 88–539, 78 Stat. 746, in part here pertinent reads as follows:

"§ 453. *Installment method*

"(a) *Dealers in personal property.*—

"(1) *In general.*—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.[1]

"(2) *Total contract price.*—For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in paragraph (1).

"(b) *Sales of realty and casual sales of personalty*—

\*   \*   \*   \*   \*

"(2) Limitation.—Paragraph (1) shall apply—

"(A) In the case of a sale or other disposition during a taxable year

beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition
—

\*   \*   \*   \*   \*

"(ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price."

Unless that part of the consideration to be received by the seller which is contingent is to be disregarded in determining the total contract price, it is my opinion that the decisions of the Commissioner and of the trial court were correct for the reasons stated in such decisions. I see no ground for disregarding future consideration as a part of the contract price because it is contingent, at least when there is a reasonable probability that it will be realized.

I think it is reasonable to infer that both the assignors and the purchaser fully believed and contemplated that the production of 495,852 barrels of oil would be reached long before the expiration of 21 years after the effective date of the assignment, June 1, 1960. It was in fact reached in 1965, only about five years subsequent to the effective date of the assignment. However, since it could not be determined with absolute certainty that such amount of production would be realized, they provided in the assignment as a cutoff date the expiration of 21 years from the effective date, in order that the agreement to pay additional contingent consideration should not remain open indefinitely, or until the wells on the lease ceased to produce oil at all in commercial quantities.

Even if the production of the 495,852 barrels of oil would in all probability be

---

1. The text of § 453(a) (1) as set forth, supra, is a reenactment by the amendment of August 31, 1964, Pub.Law 88–539, of existing law without change. All that such amendment did with respect to such text was to designate it as (3) (a) (1).

reached long before the cutoff date, until it was reached, the economically recoverable reserve of oil attributable to the assigned interests could not be determined, and only when the stated amount of 495,852 barrels of oil attributable to the assigned interests was produced, was the amount of contingent consideration susceptible of determination. That, because it was provided that when such amount of production was reached, then and not before, the net revenue from the future economically recoverable reserves attributable to the assigned interests should be determined and discounted, as provided for in the assignment, and that Everett should then pay to the assignors 48 per cent of such discounted future net revenue in six annual installments as additional contingent consideration. Hence, the total amount of the contract price could not be determined until such 48 per cent of the discounted future net revenue was first determined.

It follows that the formula provided in § 453(a)(1) of the Internal Revenue Code, set out above, could not be applied in 1960 or 1961, because the total contract price received or to be received, and the gross profit realized or to be realized are essential elements of the formula, and neither of them could be determined in 1960 or 1961, nor until the production of oil from the leases attributable to the assigned interests had reached 495,852 barrels, which did not occur until 1965.

My conclusion is that Ben and Lelia Gralapp and James and Marcella Watson did not have the right to return the payments made to them in 1960 and 1961 on the installment basis, for the reasons stated by the Commissioner as the basis for assessing the deficiencies, and the reasons stated by the trial court for sustaining such deficiency assessments, with which I fully and unqualifiedly agree.

For the foregoing reasons, I respectfully only concur in the result.