Coye C. **MASON** and Lois T. **Mason,**
**Plaintiffs,**

v.

**UNITED STATES of America,**
**Defendant.**

No. 71 C 2191.

United States District Court,
N. D. Illinois, E. D.

Oct. 18, 1973.

Stuart Duhl and Steven C. Page, Schwartz & Freeman, Chicago, Ill., for plaintiffs.

James W. Littlefield, U. S. Dept. Justice, Washington, D. C., James R. Thompson, U. S. Atty., No. Dist. of Ill., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND JUDGMENT ORDER

AUSTIN, Judge.

This action was brought for the refund of an overpayment of federal income tax and interest for the year 1966.[1] During the course of preparation of the case for trial, counsel agreed with this court that there were but three crucial questions of fact; that they would be immediately tried to a jury; and that, if the answers to the interrogatories propounded to the jury were in plaintiffs' favor, any remaining questions of law would be resolved by the court. It so happened that the answers were in plaintiffs' favor;[2] and the subject of this opinion is resolution of the issues of

---

1. Lois T. Mason is a party to this action only because she filed a joint return with her husband for 1966.

2. In substance, the jury found the following:
   (1) When he sold the shares of stock in question, Dr. Mason intended to make a gift of the difference between the fair market value of the shares and the fair market value of the consideration received.
   (2) The fair market value of the stock was $117,000.
   (3) The fair market value of a promissory note received as part of the consideration for the stock was $81,000.

law presented by the parties' cross motions for summary judgment.

The undisputed facts are as follows. On January 1, 1966, Dr. Coye C. Mason, a cash method taxpayer, sold all of his shares in Illinois Transfusion Service, Inc. to Chicago Blood Donor Service, Inc., a not for profit corporation qualified to receive charitable contributions. The shares had a fair market value of $117,000 and an adjusted basis of $29,750. In full payment for his shares, Dr. Mason received from the Chicago Blood Donor Service, Inc. $4,507.50 cash plus its $112,689.42 promissory note having a fair market value of $81,000. In March, 1966, the fair market value of an identical note held by Dr. Grimm, one of Dr. Mason's associates, had been set at $80,776.03 for purposes of determining Grimm's gross estate.

On his 1966 federal income tax return, he claimed a charitable deduction in the amount of the difference between the fair market value of the shares sold and the fair market value of the consideration received. Thus, according to the findings of the jury in this case,[3] the amount properly deducted was $31,492.-50 [$117,000—($81,000 + $4,507.50)]. The claimed deduction was disallowed, and a tax deficiency in the amount of $18,456.11 plus $3,751.90 interest was assessed. This was paid in September, 1970. Dr. Mason then filed for a tax refund of $17,161.90 plus interest, but it was disallowed. This action was filed to recover that amount.

Because the jury found Dr. Mason intended to make a gift when he sold his shares to the charitable corporation, the Government now concedes he is entitled to the charitable deduction. However, it asserts that as a result of the deduction, his recognized gain from the sale must be recomputed so as to report additional ordinary income. In reporting his gain, Dr. Mason elected the installment method under section 453 of the Internal Revenue Code, the computation of which

was as follows (numbers are rounded to the nearest dollar):

| | | |
|---|---|---|
| (a) | Selling price (cash plus note) | $117,197. |
| (b) | Basis | 29,750. |
| (c) | Total gain (a — b) | $ 87,447. |
| (d) | Gross profit percentage (c ÷ a) | 74.6154% |
| (e) | Payments received in 1966 | $ 10,142. |
| (f) | Gain recognized in 1966 (d × e) | 7,568. |

The recognized gain in 1966 was reported as a capital gain, rather than as ordinary income, on the ground that the shares sold were capital assets.

In opposition to this, the Government now argues that that portion of each payment received by Dr. Mason which represents the ratable difference between the face amount ($112,689.42) and the fair market value ($81,000) of the promissory note must be reported as ordinary income.

Thus, the question for decision is whether the difference between the face amount and fair market value of a promissory note is to receive capital gains treatment as it is paid, where: 1) such difference was deducted as part of a charitable contribution; 2) the note was received as part of the purchase price in the sale of a capital asset; and 3) the taxpayer properly elected to report his recognized gain from the transaction under the installment method of section 453. For the following reasons, it is concluded that only part of the amount in question is entitled to capital gains treatment.

I.

Under section 453(b) of the Internal Revenue Code, income from a casual sale of personal property for a price exceeding $1,000 may be reported in the manner prescribed in section 453(a)—provided that payments in the taxable year of the sale (other than promissory notes) do not exceed 30% of the selling price. In the present case, Dr. Mason met all these prerequisites to electing

3. See note 2, *supra*.

the installment method. Section 453(a) provides in pertinent part:

> Under regulations prescribed by the Secretary or his delegate, a person who . . . sells . . . personal property on the installment plan may return as income therefrom in any taxable year that portion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the *total contract price.* (emphasis added)

The related Treasury Regulations define "gross profit" as "the *selling price* less the adjusted basis." Treas.Reg. § 1.-453–1(b)(1). (emphasis added).

From the words of the Statute and the Regulations thereunder, it is clear that the "selling price" and "contract price" are one and the same figure. *See* Gralapp v. United States, 319 F.Supp. 265, 268 (D.Kan.1970); 2 Mertens, Law of Federal Income Taxation § 15.16 at 46. It is also clear from the words used that that figure is the *face amount* of the consideration received, rather than its fair market value. Otherwise, the arithmetic of the statute simply would not work properly.[4] Furthermore, where gain from the sale of a capital asset is properly reported under the installment method, such gain is entitled to capital gains treatment. *See* Carl G. Dreymann, 11 TC 153 (1948); 2 Mertens, Law of Federal Income Taxation § 15.11 at 36.

Because section 453 requires the use of the *face amount* of the note to compute Dr. Mason's recognized gain, and

because capital gains treatment is available to the entire recognized gain in the installment sale of a capital asset, it follows that the amount represented by the difference between the face amount and fair market value of the note in this case is entitled to capital gains treatment.

In arguing that the fair market value of the note should be used to compute the extent of the capital gain recognized by the taxpayer in this case, the Government apparently seeks to interject the rules of section 1001 into section 453. Section 1001(b) provides, in pertinent part:

> The amount realized from the sale or other disposition of property shall be the sum of any money received plus the *fair market value* of the property (other than money) received. (emphasis added).

Thus, it would appear that, if section 1001 applied to installment sales of capital assets, the fair market value of the consideration received in return (other than money) would be used to measure the extent of capital gains treatment of the recognized gain. Furthermore, if that were so, the Government would be correct in its contention that Dr. Mason is not entitled to capital gains treatment of that portion of each installment payment which represents the difference between the fair market value and face amount of the promissory note.

However, the clear meaning and intent of section 453 does not permit such an interpretation. Section 453 has its own set of rules as is noted in sec-

---

4. Take, for example, the facts in the present case. If the "contract price" and "selling price" were the fair market value (rather than the face value) of the consideration received from the purchaser, the calculations would be as follows:

| | | |
|---|---|---|
| (a) | Selling/contract price (cash plus note at f.m.v.) | $85,507.50 |
| (b) | Basis | 29,750.00 |
| (c) | Gross profit (a — b) | $55,757.50 |
| (d) | Gross profit percentage (c ÷ a) | 65.2077% |

| | | |
|---|---|---|
| (e) | Payments received in 1966 | $10,142.00 |
| (f) | Gain recognized in 1966 (d × e) | 6,613.36 |

Upon comparison with the actual calculations of the taxpayer in the present case, *supra* at 672, it becomes apparent that if the fair market value rather than the face value of the consideration were the "selling/contract price," *less* gain would be recognized. It is unlikely that this is the goal sought by the Government in its demand that Dr. Mason's income tax be recomputed. Yet that would appear to be the net result.

tion 1001 and the Regulations thereunder. Section 1001(d) provides:

"(d) *Installment sales.*—Nothing in this section shall be construed to prevent (in the case of property sold under contract providing for payment in installments) the taxation of that portion of any installment payment representing gain or profit in the year in which such payment is received."

And Treasury Regulation § 1.1001–1(d) states:

"(d) *Installment sales.* In the case of property sold on the installment plan, special rules for the taxation of the gain are proscribed in section 453."

It is crystal clear that Congress intended only the provisions of section 453 to govern the installment method of reporting gain on the sale of a capital asset. Because section 453 so provides, the *face amount* of the consideration received must be used to compute the extent of the capital gain. Accordingly, the argument of the Government must be rejected as to section 453.

## II.

Under section 1232(a)(1) of the Internal Revenue Code, the holder of a corporate promissory note which is a capital asset in his hands may report amounts received on retirement of such note as amounts received in exchange therefor. In other words, capital gains treatment is available in such a case. This provision is modified, however, by section 1232(a)(2) which, at the time of the transaction in this case, provided:

"[U]pon sale or exchange of bonds or other evidences of indebtedness issued after December 31, 1954, held by the taxpayer more than 6 months, any gain realized which does not exceed—

(i) an amount equal to the original issue discount [as defined in subsection (b)],

\*   \*   \*   \*   \*   \*   \*

shall be considered as gain from the sale or exchange of property which is not a capital asset."

The taxpayer relies solely on section 1232(a)(1) in arguing that he is entitled to capital gains treatment of that portion of the payments representing the difference between the face amount and the fair market value of the note in question. On the other hand, the Government relies solely on section 1232(a)(2), contending that the entire amount in question is an "original issue discount" and is therefore not entitled to capital gains treatment. In my opinion, both parties err in taking such narrow and exclusive views of the statute. As a result, they are only partially correct in their conclusions.

On the one hand, it is true that the taxpayer in this case meets the prerequisites for capital gains treatment under section 1232(a)(1). Dr. Mason is the holder of a corporate promissory note which is a capital asset, since capital assets are *all property* held by a taxpayer with certain exceptions which are not applicable here. 26 U.S.C.A. § 1221. Furthermore, the installment payments constitute amounts received for "retirement" of the note.

"A corporate note no longer needs to have interest coupons attached or be in registered form, and consequently all payments in satisfaction of such note appear to be eligible for capital gain treatment."

3B Mertens, Law of Federal Income Taxation § 22.94 at 568. Thus the payments in satisfaction of the note must be considered as amounts received in exchange of a capital asset; and, as a result, it would appear that the entire amount in question in this case is entitled to capital gains treatment under section 1232(a)(1).

On the other hand, the taxpayer fails to take into account section 1232(a)(2) as it existed when he sold his stock. That section denied capital gains treatment to that amount received upon the sale or exchange of a note held

over 6 months, which does not exceed the "original issue discount" on the note. Original issue discount is defined as "the difference between the issue price and the stated redemption price at maturity." 26 U.S.C.A. § 1232(b)(1). The "issue price", for purposes of this case, is the price paid for the note. 26 U.S.C.A. § 1232(b)(1). "Stated redemption price at maturity" means the total amount to be paid in satisfaction of the note. 26 U.S.C.A. § 1232(b)(1).

■ Applying these principles to the facts of the instant case, the following figures emerge. The "issue price" of the note was that portion of the value of the stock given in exchange for the note, the computation of which would be as follows:

| (a) Consideration for stock (cash plus note) | $117,196.92 |
|---|---|
| (b) Face amount of note | 112,689.42 |
| (c) Percentage of consideration represented by note (b ÷ a) | 96.15% |
| (d) Value of stock | $117,000.00 |
| (e) "Issue price" (c × d) | 112,495.50 |

The "stated redemption price at maturity" of the note would be its face amount —$112,689.42. Thus, the "original issue discount" would be $193.92 ($112,689.42 –$112,495.50), and not $31,689.42 (the difference between the face amount and fair market· value of the note) as contended by the Government.

Viewing section 1232 as a whole, then, $31,495.50 ($31,689.42–$193.92) is eligible for capital gains treatment. Only that portion of each installment payment on the note which represents the original issue discount ($193.92) must be reported as ordinary income.

### III.

The essence of the objections of the Government lies in its observation of the apparently inconsistent positions taken by the taxpayer. On the one hand, Dr. Mason obtained a charitable contribution deduction by taking the position that he gave Chicago Blood Donor Service, Inc. the difference between the face amount and fair market value of the note. On the other hand, in his quest for capital

gains treatment of his entire recognized gain from the sale, he asserts that only the face amount of the note should be used in computing the gain. In sum, Dr. Mason not only wants to deduct as a charitable deduction that amount represented by the differnce between the face amount and fair market value . of the note, he also wants capital gains treatment of that amount as it is received by him. Although he would be getting his cake and eating it too, there is no rule of law prohibiting that which he seeks. The Government admits he was entitled to the charitable deduction. Furthermore, sections 453 and 1232 govern the transaction in this case. Section 453 requires that the face amount of the note be used to compute the gain recognized in the sale of the stock. Since the stock is a capital asset, the entire gain would be entitled to capital gains treatment. Section 1232 limits this benefit somewhat by requiring that the original issue discount of the note ($193.92) be reported as ordinary income.

Although it is true that the installment sale provisions were intended to relieve taxpayers of the burden of appraising the value of promissory notes, the fact that the fair market value of the note was available to the taxpayer in the present case when he elected the installment method should not make those provisions unavailable. There is no mention in section 453 that installment sale treatment is unavailable if the fair market value of a promissory note is known; and I will not amend a statute which Congress in its wisdom has fashioned and enacted. For this reason, the objections of the Government must be rejected.

### IV.

It being determined that there is no genuine issue of material fact, the parties' motions for summary judgment are granted in part and denied in part in accordance with this opinion. The plaintiff is hereby adjudged to be entitled to a charitable contribution deduction for the year 1966 in the amount of $31,492.-

50; and he is entitled to recover, as an overpayment of income tax, $17,161.90 plus the legal rate of interest on that amount from September, 1970. Lastly, he is adjudged to be entitled to capital gains treatment of that portion of each installment payment on the note which represents $31,495.50 of the amount represented by the difference between the face amount and fair market value of the promissory note in question.

So ordered.