WARREN JONES COMPANY, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 1929–73. Filed August 31, 1977.

W. V. *Clodfelter,* for the petitioner.
*Thomas N. Tomashek,* for the respondent.

### OPINION

DRENNEN, *Judge:* Respondent determined deficiencies in petitioner's corporate income taxes for the taxable years ended October 31, 1969, and October 31, 1970, in the amounts of $1,936.98 and $668.66, respectively. One adjustment giving rise to the deficiencies has been conceded by petitioner. The principal issue presently in dispute is whether, in computing the gross profit percentage for an installment sale, the doctrine of collateral estoppel binds respondent to a stipulated computation for entry of decision incorporated in our decision in *Warren Jones Co. v. Commissioner,* 60 T.C. 663 (1973). That decision was entered for the taxable year ended October 31, 1968.

The present case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. Among other items, it was stipulated that this Court's official file for *Warren Jones Co. v. Commissioner,* docket No. 424–71, would be considered as evidence in this case. The stipulation of facts and joint exhibits are incorporated herein by this reference.

Warren Jones Co. had its principal office in Seattle, Wash., at the time the petition was filed in this case. It filed its income tax returns for the years in issue with the Western Service Center, Ogden, Utah.

During its taxable year ended October 31, 1968, petitioner, a cash basis taxpayer, sold an apartment building known as "Wallingford Court Apartments" to the Storeys for a total

price of $153,000, receiving a downpayment of $20,000. The balance of $133,000 was payable $1,000 per month over the next 15 years. Interest on the declining balance was payable at the rate of 8 percent per year. At the end of the 15-year period the balance due was to be paid in a lump sum and petitioner was to deliver a warranty deed to the property.

During its 1968 taxable year petitioner received $24,000 from the purchasers, including the downpayment, with $20,457.84 allocable to principal and the rest to interest. Petitioner's basis in the property at the time of sale was $61,913.34.

The only evidence of indebtedness associated with this transaction was a real estate contract executed by the Storeys. No notes, securities, or other such instrument passed between the purchasers and petitioner. The real estate contract had a fair market value of $76,980 at the time of the sale. (See 60 T.C. at 666.)

On its income tax return for 1968 petitioner did not report any gain from the sale, claiming it would realize no profit until the basis of the property sold had been recovered. In the alternative, it elected to use the installment method of reporting (under sec. 453(b), I.R.C. 1954)[1] if it was ultimately determined that it was not entitled to use the cost-recovery method of reporting gain on the sale.

In a notice of deficiency issued for the year 1968 respondent determined that petitioner was not entitled to use the cost-recovery method for reporting gain on the sale but agreed that petitioner was entitled to report the gain on the installment method. Respondent determined that petitioner's total profit on the sale was $90,479.51 and that its reportable gain in 1968 was $12,098.15, or 59.137 percent of the $20,457.84 of payments on principal received in 1968. Petitioner filed a petition in this Court alleging its right to report gain on the cost-recovery basis. Respondent denied this allegation but conceded that petitioner's alternative election of the installment method was proper.

In *Warren Jones Co. v. Commissioner, supra,* this Court held petitioner properly deferred reporting gain from the sale on

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise specified.

the ground the real estate contract was not "property (other than money)" under section 1001(b).[2] Our holding was based on a determination that petitioner's real estate contract was not the equivalent of cash since it had a fair market value of only $76,980 and with an appropriate interest discount could not be sold for anywhere near its $133,000 face amount.

The United States Court of Appeals for the Ninth Circuit reversed and remanded with directions to enter judgment for the Commissioner. *Warren Jones Co. v. Commissioner*, 524 F.2d 788 (9th Cir. 1975). The Ninth Circuit read the legislative history of section 1001(b) and the enactment of section 453 to mean Congress intended to establish a definite rule that if the fair market value of property received in an exchange can be ascertained, that fair market value must be reported as an amount realized. In so doing the court rejected our conclusion that cash equivalency was an element to be considered for a cash method taxpayer under section 1001(b).

In the prior litigation the Ninth Circuit held only that petitioner's reporting of the 1968 sale was improper; it did not consider the installment method computations. The court concluded its opinion with these comments (524 F.2d at 794):

The Tax Court found, as a fact, that the taxpayer's real estate contract with the Storeys [the purchasers] had a fair market value of $76,980 in the taxable year of sale. Consequently, the taxpayer must include $76,980 in determining the amount realized under section 1001(b). As previously noted, however, the Commissioner has conceded that the taxpayer is eligible to report on the installment basis and has calculated the taxpayer's deficiency accordingly.

The decision of the Tax Court is reversed, and on remand, the Tax Court will enter judgment for the Commissioner.[10]

Reversed and remanded, with directions.

---

[10] The taxpayer has not here challenged, and we have not examined, the Commissioner's calculation of the taxpayer's gain under section 453. The Tax Court may examine those calculations on remand, if the taxpayer so requests.

---

[2] Sec. 1001(b). AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. * * *

On February 4, 1976, the Tax Court entered its decision pursuant to the opinion and mandate of the Ninth Circuit for the Commissioner that the deficiency in income tax for the taxable year ended October 31, 1968, was $1,373.04. This entry was based on a stipulated computation submitted by and agreed to by the parties. The pertinent details supporting the deficiency were as follows:

Warren Jones Co.                                         Taxable Year Ended Oct. 31, 1968

### Computation of Taxable Income

| | |
|---|---:|
| Taxable income as determined in accordance with the opinion of the Tax Court dated Aug. 7, 1973 | $12,724.00 |
| (a) Increase in gain reportable | 7,269.20 |
| Corrected taxable income | 19,993.20 |

### Explanation of Adjustment

(a) The Court of Appeals determined that the fair market value of the deferred payment contract must be included in determining the amount realized on the sale.

| | |
|---|---:|
| Amount realized: | |
| Fair market value of deferred payment contract | $76,980.00 |
| Cash payment at closing | 20,000.00 |
| Total amount realized | 96,980.00 |
| Less: | |
| Adjusted basis | (61,913.34) |
| Selling expenses | (607.15) |
| Net gain on sale | 34,459.51 |
| Gain reportable under installment method: | |
| Payments received during taxable year | 20,457.84 |
| Profit ratio ($34,459.51/96,980) | .3553259 |
| Gain reportable | 7,269.20 |
| Gain reported per Tax Court opinion | 0 |
| Increase in gain reportable | 7,269.20 |

### Computation of Tax

| | |
|---|---:|
| Corrected taxable income | $19,993.20 |
| Normal tax | 4,398.50 |
| Surcharge—10% prorated for Jan. 1, 1968, through Oct. 31, 1968 (.083333) | 366.54 |
| Corrected income tax liability | 4,765.04 |
| Income tax assessed and paid | 3,392.00 |
| Deficiency, underassessment, and underpayment | 1,373.04 |

For reasons hereinafter stated we believe the computation submitted to the Court as the basis for decision was in error.

Petitioner received principal payments of $1,448.44 and $1,569 on the Storey contract during its fiscal years 1969 and 1970, respectively. Since the Ninth Circuit opinion in the 1968 case was not filed until September 22, 1975, petitioner again reported no gain from the sale of the apartment building in its returns for 1969 and 1970. Respondent again determined that installment sale gains in the amounts of $856.56 and $927.86 were taxable in the years 1969 and 1970, respectively, being 59.137 percent of the principal payments received in those years.

In its petition in this case, filed March 19, 1973, petitioner again alleged its right to report gain on the sale of the apartment on the cost-recovery method, which respondent denied. By amendment to his answer, filed May 19, 1976, respondent affirmatively relied on the doctrine of collateral estoppel, based on the recently filed opinion of the Ninth Circuit, to deny petitioner the right to report the gain on the cost-recovery method for the years 1969 and 1970. Petitioner did not file a reply to the amendment to respondent's answer but in his opening statement counsel for petitioner conceded that petitioner was not entitled to report gain on the sale on the cost-recovery method. He also alleged that respondent was prevented by collateral estoppel from claiming that the amount of installment gain reportable by petitioner in 1969 and 1970 was any greater than 35.53 percent of the amounts of principal received in those years as used in the computation for entry of decision by this Court in the 1968 case.

On brief petitioner does not argue the merits of the two different methods of computation, the one utilized by respondent in his notice of deficiency in this case wherein the contract price is used in the computation, and the other utilized in the computation for entry of decision by this Court in the 1968 case wherein the value of the land contract was used, but simply argues that the computation used in arriving at the decision entered by this Court in the 1968 case is conclusive, right or wrong.

At the outset we must observe that collateral estoppel is an affirmative defense and must be pleaded. *Jefferson v. Commissioner*, 50 T.C. 963 (1968). Petitioner has not pleaded collateral estoppel against respondent in this case, and perhaps it should not be considered an issue in this case. However, the

issue was raised orally in counsel's opening statement, and since respondent has not objected on the grounds mentioned and both parties have argued the applicability of collateral estoppel against respondent on brief, we believe petitioner's plea may be considered an issue in this case under Rule 37(c), Tax Court Rules of Practice and Procedure, and we will deal with it in this opinion.

We turn first to determining the correct way of computing the reportable gain using the installment method of reporting under the circumstances of this case.

Since the gain for the 1968 sale was to be reported under the installment method pursuant to section 453(b),[3] we believe the computation of the increase in gain reportable for 1968 submitted to this Court as the basis for its decision for 1968 was in error.

Under section 453(b)(1)(A), income from a sale or other disposition of real property "may (under regulations prescribed by the Secretary * * *) be returned on the basis and in the manner prescribed in subsection (a)." Section 453(a) is the installment method provision relating to dealers in personal property. It provides that under regulations prescribed by the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year "that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price."

In keeping with this statutory mandate, section 1.453–1(b)(1), Income Tax Regs., provides that the income to be reported under section 453 for any taxable year is that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when the property is paid for bears to the total contract price.

---

[3] Under sec. 453(b)(2)(B) evidences of indebtedness of the purchaser are specifically excluded from payments received in the year of sale so the value of the land contract is not included in calculating whether petitioner received 30 percent or less of the selling price in the year of sale. Therefore, reporting on the installment basis is available to petitioner even though the value of the land contract must be included in the "amount realized" for purposes of sec. 1001(b). See Ninth Circuit opinion in *Warren Jones Co. v. Commissioner*, 524 F.2d 788 (1975); also *Mason v. United States*, 365 F.Supp. 670 (N.D. Ill. 1973).

For sales of real estate, gross profit is defined by the regulations to mean the selling price less the adjusted basis as defined in section 1011 and the regulations thereunder. Also, gross profit for a sale of real estate by a person other than a dealer is reduced by commissions and other selling expenses for purposes of determining the proportion of installment payments returnable as income.

Under these rules, the gross profit percentage to be applied against payments to arrive at the income to be reported by petitioner for a taxable year should be:

| Selling price: | |
|---|---|
| Face amount of deferred payments | $133,000.00 |
| Cash payment at closing | 20,000.00 |
| | 153,000.00 |
| Less: | |
| Adjusted basis | (61,913.34) |
| Selling expenses | (607.15) |
| Gross profit | 90,479.51 |
| Gross profit percentage: | |
| Gross profit (a) | 90,479.51 |
| Contract price (b) | 153,000.00 |
| Gross profit percentage (a ÷ b) | 59.137% |

This gross profit percentage of 59.137 percent compares to the 35.53259 percent used in the stipulated computation in docket No. 424–71.[4] The error in the stipulated computation is that "selling price" and "contract price" (which are the same amount in these cases because there were no mortgages, see sec. 1.453–4(c), Income Tax Regs.) were not used. Instead, "amount realized," as determined under section 1001(b), was used to determine "net gain on sale" and to arrive at a "profit ratio."

Section 453 has its own rules apart from section 1001, as noted in section 1001 and the corresponding regulations. Section 1001(d) provides:

(d) INSTALLMENT SALES.—Nothing in this section shall be construed to prevent (in the case of property sold under contract providing for payment

---

[4] The gross profit percentage used by respondent in his statutory notices of deficiency was 59.137 percent for the taxable year 1968 as well as the taxable years 1969 and 1970.

in installments) the taxation of that portion of any installment payment representing gain or profit in the year in which such payment is received.

Section 1.1001–1(d), Income Tax Regs., indicates that for property sold on the installment plan special rules for the taxation of the gain are prescribed in section 453.

More to the point, the selling price and contract price should have included the total amount the purchaser agreed to pay, and the deferred payments should have been included at their face amount without regard to fair market value. *Frizzelle Farms, Inc. v. Commissioner*, 61 T.C. 737, 742 (1974) (reviewed by the Court), affd. per curiam 511 F.2d 1009 (4th Cir. 1975); *Mason v. United States*, 365 F.Supp 670 (N.D. Ill. 1973), affd. 513 F.2d 25 (7th Cir. 1975).

This brings us to the issue in dispute. Petitioner argues that for 1969 and 1970 the doctrine of collateral estoppel binds respondent to the gross profit percentage used in the stipulated computation for entry of decision incorporated in the previous *Warren Jones Co.* decision for 1968. Respondent contends the doctrine does not apply and that the proper gross profit percentage for 1969 and 1970 is 59.137 percent.

The doctrine of collateral estoppel is judicial in origin. In *Commissioner v. Sunnen*, 333 U.S. 591 (1948), dealing with royalty payments for which there had been a decision in earlier years, the Supreme Court described the scope of the doctrine as follows:

Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. Collateral estoppel operates, in other words, to relieve the government and the taxpayer of "redundant litigation of the identical question of the statute's application to the taxpayer's status." *Tait v. Western Md. R. Co.*, 289 U.S. 620, 624.

But collateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability. A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or

erroneous, at least for future purposes. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion. Compare *United States v. Stone & Downer Co.*, 274 U.S. 225, 235–236. Such consequences, however, are neither necessitated nor justified by the principle of collateral estoppel. That principle is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers.

And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. *Tait v. Western Md. R. Co., supra.* If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation. See *Travelers Ins. Co. v. Commissioner*, 161 F.2d 93. And where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive. * * * [333 U.S. at 598–600.]

Further guidance is provided in *United States v. International Building Co.*, 345 U.S. 502 (1953). In that case the basis of depreciable property had been redetermined by the Commissioner for 1933, 1938, and 1939, and the taxpayer filed petitions for review with the Tax Court. Meanwhile, the taxpayer filed a bankruptcy proceeding that ended in a confirmed plan of reorganization. Shortly thereafter, the Tax Court, pursuant to the parties' stipulation, entered formal decisions that there were no deficiencies for the years in issue. The Tax Court, however, held no hearing, no stipulations of fact were entered into, no briefs were filed or argument had. Later the Commissioner assessed deficiencies for 1943, 1944, and 1945, challenging once more the correctness of the basis of depreciation. The taxpayer argued that the Tax Court decisions for 1933, 1938, and 1939, were res judicata of the basis for depreciation.

The Supreme Court, noting that the inquiry must always be as to the point or question actually litigated and determined in the original action, concluded that the previous judgments were res judicata for the years 1933, 1938, and 1939, but the

doctrine of collateral estoppel was not involved for 1943, 1944, and 1945. The Court reasoned that the decisions entered by the Tax Court for the years 1933, 1938, and 1939, were only a pro forma acceptance by the Tax Court of an agreement between the parties to settle their controversy for reasons undisclosed. There was no showing that the issues raised by the pleadings were submitted to the Tax Court for determination by the Court. The judgment had no greater dignity, so far as collateral estoppel was concerned, than any judgment entered only as a compromise between the parties.

It is true, as petitioner points out, that the controlling facts and applicable legal rules for the installment method computations in issue here remained unchanged since the prior *Warren Jones Co.* case was decided.

But the prior judgment acts as a collateral estoppel only as to those matters actually presented and determined in the first suit. *Commissioner v. Sunnen, supra.* We are not precluded from considering the installment method computation for 1969 and 1970. A stipulated computation adopted without a hearing or argument does not invoke the rule of collateral estoppel. See *United States v. International Building Co., supra.* This matter is being litigated with respect to petitioner for the first time. To apply collateral estoppel here would perpetuate an error that would accord petitioner a tax treatment different from that given other taxpayers electing the installment method. That consequence is not warranted by the principle of collateral estoppel.

The only post-*Sunnen* case dealing with a decision based on a computation by parties for entry of decision that has been brought to our attention is consistent with our conclusion in this case. In *Texas-Empire Pipe Line Co. v. Commissioner,* 10 T.C. 140 (1948), affd. 176 F.2d 523 (10th Cir. 1949), the doctrine of collateral estoppel was applied to a decision by the Tax Court in a prior suit on a basis-for-depreciation issue entered under old Rule 50. That Rule is substantially identical to the present Rule 155. However, unlike the present case, the parties had disagreed on the computation, a hearing was held on the difference between the computations, and briefs were filed on the depreciation question that caused the difference between the parties' computations. If a hearing had been held and briefs filed on the installment method

computations in the previous *Warren Jones Co.* litigation, no doubt the computation would have been corrected.

We hold the rule of collateral estoppel does not bind respondent to the stipulated computation for entry of decision in the prior case dealing with the 1968 taxable year, and respondent's installment method computations for the 1969 and 1970 taxable years are correct.

*Decision will be entered for the respondent.*