WARREN JONES COMPANY,
Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

No. 74–1531.

United States Court of Appeals,
Ninth Circuit.

Sept. 22, 1975.

Meade Whitaker, I.R.S., Washington,
D. C. (argued), for appellant.

W. V. Clodfelter, Seattle, Wash. (argued), for appellee.

OPINION

Before ELY and HUFSTEDLER, Circuit Judges, and TAYLOR,* Senior District Judge.

* Honorable Fred M. Taylor, Senior United States District Judge, District of Idaho, sitting by designation.

ELY, Circuit Judge:

During its taxable year ending on October 31, 1968, the Warren Jones Company, a cash basis taxpayer, sold an apartment building for $153,000. In return, the taxpayer received a cash downpayment of $20,000 and the buyer's promise in a standard form real estate contract, to pay $133,000, plus interest, over the following fifteen years. The Tax Court held, with three judges dissenting, that the fair market value of the real estate contract did not constitute an "amount realized" by the taxpayer in the taxable year of sale under section 1001(b) of the Internal Revenue Code.[1] *Warren Jones Co.,* 60 T.C. 663 (1973) (reviewed by the full Court). The Commissioner of Internal Revenue has appealed, and we reverse.

## I. Background

On May 27, 1968, the taxpayer, a family-held corporation chartered by the State of Washington, entered into a real estate contract for the sale of one of its Seattle apartment buildings, the Wallingford Court Apartments, to Bernard and Jo Ann Storey for $153,000. When the sale closed on June 15, 1968, the Storeys paid $20,000 in cash and took possession of the apartments. The Storeys were then obligated by the contract to pay the taxpayer $1,000 per month, plus 8 percent interest on the declining balance, for a period of fifteen years. The balance due at the end of fifteen years is to be payable in a lump sum. The contract was the only evidence of the Storeys' indebtedness, since no notes or other such instruments passed between the parties. Upon receipt of the full purchase price, the taxpayer is obligated by the contract to deed the Wallingford Apartments to the Storeys.

The Tax Court found, as facts, that the transaction between the taxpayer and the Storeys was a completed sale in the taxable year ending on October 31, 1968, and that in that year, the Storeys were solvent obligors. The court also found that real estate contracts such as that between the taxpayer and the Storeys were regularly bought and sold in the Seattle area. The court concluded, from the testimony before it, that in the taxable year of sale, the taxpayer could have sold its contract, which had a face value of $133,000, to a savings and loan association or a similar institutional buyer for approximately $117,980. The court found, however, that in accordance with prevailing business practices, any potential buyer for the contract would likely have required the taxpayer to deposit $41,000 of the proceeds from the sale of the contract in a savings account, assigned to the buyer, for the purpose of securing the first $41,000 of the Storeys' payments. Consequently, the court found that in the taxable year of sale, the contract had a fair market value of only $76,980 (the contract's selling price minus the amount deposited in the assigned savings account.)

On the sale's closing date, the taxpayer had an adjusted basis of $61,913 in the Wallingford Apartments. In determining the amount it had realized from the sale, the taxpayer added only the $20,000 downpayment and the portion of the $4,000 in monthly payments it had received that was allocable to principal. Consequently, on its federal income tax return for the taxable year ending October 31, 1968, the taxpayer reported no gain from the apartment sale. The taxpayer's return explained that the corporation reported on the cash basis and that under the Tax Court's holding in *Nina J. Ennis,* 17 T.C. 465 (1951), it was not required to report gain on the sale until it had recovered its basis. The return also stated, however, that in the event the taxpayer was required to report gain in the taxable year of the sale, it elected to do so on the installment basis (I.R.C. § 453).

The Commissioner disagreed with the taxpayer's assertion that it had realized no gain on the sale, but he conceded that the sale qualified as an installment sale.

---

1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, 26 U.S.C. (1970).

Consequently, the Commissioner recalculated the taxpayer's gain in accordance with section 453 and notified the taxpayer that it had recognized an additional $12,098 in long term capital gain. The taxpayer then petitioned the Tax Court for a redetermination of its liability.

Section 1001 provides, in pertinent part, as follows:

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis . . .

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.[2]

The question presented is whether section 1001(b) requires the taxpayer to include the fair market value of its real estate contract with the Storeys in determining the "amount realized" during the taxable year of the sale.[3]

■ Holding that the fair market value of the contract was not includable in the amount realized from the sale, the Tax Court majority relied on the doctrine of "cash equivalency." Under that doctrine, the cash basis taxpayer must report income received in the form of property only if the property is the "equivalent of cash." *See generally* 2 J. Mertens, The Law of Federal Income Taxation §§ 11.01–11.05 (Malone rev. 1974).

■ The Tax Court majority adopted the following as its definition of the phrase, "equivalent of cash":

. . . if the promise to pay of a solvent obligor is unconditional and assignable, not subject to set-offs, and is of a kind that is frequently transferred to lenders or investors at a discount not substantially greater than the generally prevailing premium for the use of money, such promise is the equivalent of cash . . .

*Warren Jones Co., supra* at 668–69, *quoting, Cowden v. Commissioner*, 289 F.2d 20, 24 (5th Cir. 1961). Applying the quoted definition, the Tax Court held that the taxpayer's contract, which had a face value of $133,000, was not the "equivalent of cash" since it had a fair market value of only $76,980. Had the taxpayer sold the contract, the discount from the face value, approximately 42 percent, would have been "substantially greater than the generally prevailing premium for the use of money."[4]

The Tax Court observed that requiring the taxpayer to realize the fair market value of the contract in the year of the sale could subject the taxpayer to substantial hardships. The taxpayer would be taxed in the initial year on a substantial portion of its gain from the sale of the property, even though it had received, in cash, only a small fraction of the purchase price. To raise funds to pay its taxes, the taxpayer might be forced to sell the contract at the contract's fair market value, even though such a sale might not otherwise be necessary or advantageous. Most importantly in the Tax Court's view, if the

2. With certain exceptions not relevant here, section 1002 of the Code requires the full amount of gain determined under section 1001 to be recognized. The exceptions to section 1002 provide nonrecognition treatment for property received in an exchange that is "substantially a continuation of the old investment still unliquidated." Treas.Reg. §§ 1.1002–1(a)–(c).

3. Several commentators have addressed the question. *See, e. g.*, 2 J. Mertens, The Law of Federal Income Taxation § 11.07 (Malone rev. 1974); J. Sneed, The Configurations of Gross

Income 39–62 (1967); Levin & Javaras, Receipt of Notes and Other Rights to Future Payments by a Cash-Basis Taxpayer, 54 A.B.A.J. 405 (1968); Comment, *The Doctrine of Cash Equivalency*, 22 U.C.L.A.L.Rev. 219 (1974); Comment, *Realization of Income in Deferred Payment Sales*, 34 Mo.L.Rev. 357 (1969).

4. The taxpayer's argument on appeal that to be a cash equivalent, a debt instrument must be negotiable is untenable. *See, e. g., Heller Trust v. Comm'r*, 382 F.2d 675, 681 (9th Cir. 1967); *Cowden v. C.I.R.*, 289 F.2d 20, 24 (5th Cir. 1961).

taxpayer were required to realize the fair market value of the contract in the year of the sale, the sale transaction would be closed for tax purposes in that year; hence, the taxpayer's capital gain on the transaction would be permanently limited to the difference between its adjusted basis and the contract's fair market value plus the cash payments received in the year of sale. If the taxpayer did retain the contract, so as to collect its face value, the amounts received in excess of the contract's fair market value would constitute ordinary income. The Tax Court also noted that requiring the cash basis taxpayer to realize the fair market value of the real estate contract would tend to obscure the differences between the cash and accrual methods of reporting.

The Commissioner does not dispute the Tax Court's conclusion that the taxpayer's contract with the Storeys had a fair market value of $76,980, or any other of the court's findings of fact.[5] Rather, the Commissioner contends that since, as found by the Tax Court, the contract had a fair market value, section 1001(b) requires the taxpayer to include the amount of that fair market value in determining the amount realized.[6]

## II. Statutory Analysis

The first statutory predecessor of section 1001(b) was section 202(b) of the Revenue Act of February 24, 1919, which stated:

> When property is exchanged for other property, the property received in ex-

change shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any . . . . . .

Ch. 18, § 202(b), 40 Stat. 1060. We have no doubt that under that statute, the taxpayer would have been required to include the fair market value of its real estate contract as an amount realized during the taxable year of sale.

Only three years later, however, in the Revenue Act of November 23, 1921, Congress replaced the language of the statute enacted in 1919 with the following:

> On an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value . . . . .

Ch. 136, § 202(c), 42 Stat. 230. The original statute had created "a presumption in favor of taxation." H.R.Rep. No. 350, 67th Cong., 1st Sess. (1921), reproduced at 1939–1 Cum.Bull. (Part 2) 168, 175. In the 1921 Act, Congress doubtless intended a policy more favorable to the taxpayer. Interpreting the 1921 statute, the Treasury Regulations provided that

> [p]roperty has a readily realizable market value if it can be readily converted into an amount of cash or its equivalent substantially equal to the fair value of the property.

Treas.Reg. 62, Art. 1564 (1922 ed.). The law established in 1921 appears to have been substantially in accord with the position taken in this case by the Tax Court majority.

---

5. Relying primarily on *Bedell v. Comm'r*, 30 F.2d 622 (2d Cir. 1929), the taxpayer disputes the Tax Court's finding that the sale of the Wallingford Apartments was a completed transaction in the taxable year ending October 31, 1968. The question whether a particular sale is completed is ordinarily a question of fact, *Clodfelter v. Comm'r*, 426 F.2d 1391 (9th Cir. 1970), and the disputed finding in the present case is most assuredly not clearly erroneous.

6. The Commissioner's theoretical approach to the result for which he contends is not altogether clear. He may be rejecting the doctrine of cash equivalency altogether, *cf. Warren Jones Co., supra* at 673–74 (Quealy, J., dissent-

ing), or he may be contending that any property with a fair market value is the equivalent of cash in the amount of its fair market value. *See* Comment, *The Doctrine of Cash Equivalency, supra* n.3 at 225–26; *but see* M. Levine, Real Estate Transactions, Tax Planning and Consequences § 731 (1973). Since as to a cash basis taxpayer, with which we are here concerned, both theories would achieve the same result, we need not distinguish between them.

The taxpayer contends that the basic question before us is one of fact. We disagree. The question is essentially one of statutory construction and it therefore presents an issue of law.

Notwithstanding the foregoing, in the Revenue Act of 1924, ch. 234, § 202(c), 43 Stat. 256, Congress again changed the law, replacing the 1921 statute with the language that now appears in section 1001(b) of the current Code. Of the 1921 statute, and its requirement of a "readily realizable market value," the Senate Finance Committee wrote in 1924:

> The question whether, in a given case, the property received in exchange has a readily realizable market value is a most difficult one, and the rulings on this question in given cases have been far from satisfactory. * * * The provision can not be applied with accuracy or consistency.

S.Rep. No. 398, 68th Cong., 1st Sess. (1924), reproduced at 1939–1 Cum.Bull. (Part 2) 266, 275. *See also* H.R.Rep. No. 179, 68th Cong., 1st Sess. (1924), reproduced at 1939–1 Cum.Bull. (Part 2) 241, 251. Under the 1924 statute, "where income is realized in the form of property, the measure of the income is the fair market value of the property at the date of its receipt." H.R.Rep. No. 179, *supra*, 1939–1 Cum.Bull. (Part 2) at 250; S.Rep. No. 398, *supra*, 1939–1 Cum.Bull. (Part 2) at 275.[7]

There is no indication whatsoever that Congress intended to retain the "readily realizable market value" test from the 1921 statute as an unstated element of the 1924 Act. Indeed, as noted above, Congress sharply criticized that test. We cannot avoid the conclusion that in 1924 Congress intended to establish the more definite rule for which the Commissioner here contends and that consequently, if the fair market value of property received in an exchange can be ascertained, that fair market value must be reported as an amount realized.

Congress clearly understood that the 1924 statute might subject some taxpayers to the hardships discussed by the Tax Court majority. In the Revenue Act of 1926, ch. 27, § 212(d), 44 Stat. 23, Congress enacted the installment basis for reporting gain that is now reflected in section 453 of the current Code. Under section 453, a taxpayer who sells real property and receives payments in the year of sale totaling less than 30 percent of the selling price may elect to report as taxable income in any given year only

> that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

26 U.S.C. § 453(a)(1).

By providing the installment basis, Congress intended ". . . to relieve taxpayers who adopted it from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact they had received in cash only a small portion of the sales price." *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 503, 68 S.Ct. 695, 700, 92 L.Ed. 831 (1948). For sales that qualify, the installment basis also eliminates the other potential disadvantages to which the Tax Court referred. Since taxation in the year of the sale is based on the value of the payments actually received, the taxpayer should not be required to sell his obligation in order to meet his tax liabilities. Furthermore, the installment basis does not change the character of the gain received. If gain on an exchange would otherwise be capital, it remains capital under section 453. Finally, the installment basis treats cash and accrual basis taxpayers equally.

We view section 453 as persuasive evidence in support of the interpretation of section 1001(b) for which the Commissioner contends. The installment basis is Congress's method of providing relief from the rigors of section 1001(b). In its report on the Revenue Act of 1926, the Senate Finance Committee expressly noted that in sales or exchanges not qualifying for the installment basis, "deferred-payment contracts"

---

7. Section 203 of the Revenue Act of 1924, ch. 234, § 203, 43 Stat. 256, a forerunner of section 1002 of the current Code, required recognition of the entire amount of gain realized under the 1924 Act's section 202.

. . . are to be regarded as the equivalent of cash if such obligations have a fair market value. In consequence, that portion of the initial payment and of the fair market value of such obligations which represents profit is to be returned as income as of the taxable year of the sale.

S.Rep. No. 52, 69th Cong., 1st Sess. (1926), reproduced at 1939–1 Cum.Bull. (Part 2) 332, 347.

On this appeal, however, the taxpayer has made another argument with respect to section 453. It contends that subsection (b)(3), added to section 453 in 1969, may be read as Congress's definition of the phrase "equivalent of cash." As noted above, taxpayers who sell property and receive "payments" in the year of sale that exceed 30 percent of the selling price may not report on the installment basis. Under section 453(b)(2)(A)(ii), "evidences of indebtedness of the purchaser" are not to be considered as "payments" in the year of sale in determining whether the payments constitute 30 percent of the selling price. Section 453(b)(3), added by the Tax Reform Act of 1969, provides that

. . . a bond or other evidence of indebtedness which is payable on demand, or which is issued by a corporation or a government or a political subdivision thereof (A) with interest coupons attached or in registered form (other than one in registered form which the taxpayer establishes will not be readily tradable in an established securities market), or (B) in any other form designed to render such bond or other evidence of indebtness readily tradable in an established securities market, shall not be treated as an evidence of indebtedness of the purchaser.

In the taxpayer's view, property received in a sale or exchange should not be considered the equivalent of cash under section 1001(b) unless the property is of the types described in section 453(b)(3).[8]

8. The argument upon which the taxpayer relies is fully developed in Comment, *The Doc-*

Congress added section 453(b)(3) to the Code for the purpose of excluding from the installment basis those taxpayers who sell property and receive more than 30 percent of the selling price in the form of highly liquid instruments of debt. Congress concluded that such taxpayers, like taxpayers receiving cash, would not suffer the hardships that the installment basis was designed to alleviate. *See* H.R.Rep. No. 413, 91st Cong., 1st Sess. 107–08 (1969) (1969–3 Cum.Bull. 200, 267), U.S.Code Cong. & Admin.News 1969, p. 1645. We find no indication that Congress intended that section 453(b)(3) should be given a broader application. If we were to adopt the taxpayer's argument, we would substantially nullify section 453 with respect to cash basis taxpayers receiving deferred payment obligations other than those described in section 453(b)(3). Such taxpayers, not required to include the fair market value of their obligations in determining the amount realized under section 1001(b), would rarely, if ever, elect to report on the installment basis. In the light of the other legislative history of section 453, hitherto discussed, it is clear to us that Congress, in 1969, did not contemplate, or intend, such a result.

### III. Case Law

The prior decisions of our own court support the conclusion we have reached. On several occasions, we have held that if the fair market value of a deferred payment obligation received in a sale or other exchange can be ascertained, that fair market value must be included as an amount realized under section 1001(b). Most recently, in *In re Steen*, 509 F.2d 1398, 1404–05 (9th Cir. 1975), we held that the fair market value of an installment payment contract received in exchange for shares of stock was ascertainable and that, consequently, that fair market value was an amount realized in the year of the sale. In *Heller Trust v. Commissioner*, 382 F.2d 675, 681 (9th Cir. 1967), our court

*trine of Cash Equivalency, supra* n.3 at 233–38.

affirmed a Tax Court decision requiring a taxpayer to include the fair market value of real estate contracts as an amount realized in the year of a sale, even though the fair market value of the contracts there involved was only 50 percent of their face value. *See also Clodfelter v. Commissioner*, 426 F.2d 1391 (9th Cir. 1970); *Tombari v. Commissioner*, 299 F.2d 889, 892–93 (9th Cir. 1962); *Gersten v. Commissioner*, 267 F.2d 195 (9th Cir. 1959).[9]

There are, of course, "rare and extraordinary" situations in which it is impossible to ascertain the fair market value of a deferred payment obligation in the year of sale. *See* Treas.Reg. § 1.1001–1(a). The total amount payable under an obligation may be so speculative, or the right to receive any payments at all so contingent, that the fair market value of the obligation cannot be fixed. *See Burnet v. Logan*, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931); *In re Steen*, 509 F.2d 1398, 1403–04 (9th Cir. 1975) (right to payment depended on favorable judicial decision on novel question of state law); *Westover v. Smith*, 173 F.2d 90 (9th Cir. 1949). If an obligation is not marketable, it may be impossible to establish its fair market value. *See Willhoit v. Commissioner*, 308 F.2d 259 (9th Cir. 1962) (uncontradicted testimony that there was no market for high risk con-

tracts); *Phillips v. Frank*, 295 F.2d 629 (9th Cir. 1961) (uncontradicted testimony that highly speculative contracts could not have been sold in the year of sale). *But see United States v. Davis*, 370 U.S. 65, 71–74, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962) (wife's release of her marital rights in a property settlement agreement held to have a fair market value equal to the value of property that her husband transferred to her in exchange); *Gersten v. Commissioner, supra* at 197 ("It is not necessary to find any actual sales of like articles to establish a fair market value.")

■ The Tax Court found, as a fact, that the taxpayer's real estate contract with the Storeys had a fair market value of $76,980 in the taxable year of sale. Consequently, the taxpayer must include $76,980 in determining the amount realized under section 1001(b). As previously noted, however, the Commissioner has conceded that the taxpayer is eligible to report on the installment basis and has calculated the taxpayer's deficiency accordingly.

The decision of the Tax Court is reversed, and on remand, the Tax Court will enter judgment for the Commissioner.[10]

Reversed and remanded, with directions.

**9.** *Accord, McCormac v. United States*, 424 F.2d 607, 191 Ct.Cl. 483 (1970); *Kaufman v. Comm'r*, 372 F.2d 789, 793–94 (4th Cir. 1966); *Campagna v. United States*, 290 F.2d 682 (2d Cir. 1961); 2 J. Mertens, *supra* n. 3; J. Sneed, *supra* n. 3 at 48–49.

The Tax Court adopted as its definition of "cash equivalency" certain language from the opinion in *Cowden v. Comm'r*, 289 F.2d 20 (5th Cir. 1961). In our view, the holding in *Cowden* does not conflict with the prior decisions of our court or with our present decision. In *Cowden*, the Fifth Circuit held that the Tax Court had overemphasized one of its findings of fact in reaching its decision and remanded the case for the Tax Court's reconsideration. The language adopted by the Tax Court appears within the context of the Fifth Circuit's discussion, in *Cowden*, of the taxpayer's con-

tention that the deferred payment obligation he had received in exchange for an oil and gas lease could have no realizable value because it was not negotiable. In rejecting the taxpayer's contention, the *Cowden* court appears to have written the language adopted by the Tax Court principally as a description of the obligation involved in that case. *See Dennis v. Comm'r*, 473 F.2d 274, 285 (5th Cir. 1973), in which the Fifth Circuit, citing *Cowden*, states that when property received in a sale or exchange has a fair market value, that value constitutes an amount realized.

**10.** The taxpayer has not here challenged, and we have not examined, the Commissioner's calculation of the taxpayer's gain under section 453. The Tax Court may examine those calculations on remand, if the taxpayer so requests.