**T. J. STARKER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 76–81.**

United States District Court, D. Oregon.

May 13, 1977.

---

Charles P. Duffy, Donald J. Georgeson, Portland, Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., Craig J. Casey, Asst. U. S. Atty., Portland, Or., Robert G. Burt, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

SOLOMON, Judge.

Plaintiff T. J. Starker (plaintiff) filed this action for a tax refund, claiming that he is entitled to non-recognition treatment under 26 U.S.C. § 1031(a),[1] for property transfer-

---

1. "§ 1031. *Exchange of property held for productive use or investment*
   (a) *Nonrecognition of gain or loss from exchanges solely in kind.*

No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor

red to Crown Zellerbach Corporation (Crown).

On April 1, 1967, plaintiff and plaintiff's son and daughter-in-law, Bruce and Elizabeth Starker (Starkers), entered into a Land Exchange Agreement (Agreement) with Crown. In accordance with this Agreement, plaintiff and the Starkers conveyed 1,843 acres of timberland to Crown and Crown entered an "Exchange Value" balance (exchange balance) on its books of $1,502,500 for plaintiff and $73,500 for the Starkers.

Under the Agreement, plaintiff and the Starkers were to locate acceptable parcels of real property which Crown would then buy and convey to them. As each parcel was purchased, the exchange balance was reduced by the purchase price and the acquisition costs.

Plaintiff and the Starkers received an additional credit for a six per cent annual "growth factor" based on the exchange balance remaining on Crown's books at the end of each month. This growth factor was added to the exchange balance.

The Agreement also provided that if there was an exchange balance in favor of the plaintiff or the Starkers after five years, Crown could pay the balance in cash rather than property.

Between July 1967 and May 1969, twelve parcels of property were located by plaintiff. They were acquired by Crown and conveyed to plaintiff. The total value of the twelve parcels was $1,577,387.91.

During the time the twelve parcels were being located and acquired, a six per cent growth factor of $74,887.91 was added to plaintiff's exchange balance. Plaintiff did not receive any cash because the exchange balance, including the growth factor, equalled the cost of the twelve parcels.

In 1967, Crown conveyed three parcels of property to the Starkers. The value of these parcels equalled their exchange bal-

stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or inter-

ance of $73,500, and the Starkers did not receive any cash.

In their income tax returns for 1967, plaintiff and the Starkers treated the transfers to Crown as non-recognition transactions under § 1031 of the Internal Revenue Code. The Internal Revenue Service (IRS) ruled that the transactions were not tax exempt and assessed a tax deficiency of $300,930.31 plus interest against the plaintiff and $35,248.41 against the Starkers. They paid the deficiencies and filed claims for refunds, which the IRS disallowed.

The Starkers filed an action for a tax refund. Although no case was directly in point, on May 1, 1975, I held that under *Alderson v. Commissioner of Internal Revenue,* 317 F.2d 790 (9th Cir. 1963), the transfer was entitled to non-recognition treatment. The government appealed, but the appeal was voluntarily dismissed and the Starkers received their refund.

On January 26, 1976, plaintiff filed this action for a tax refund of $363,758.79.

## CONTENTIONS

Plaintiff contends that the transaction here qualifies for non-recognition treatment under § 1031. He also contends that the government is collaterally estopped from litigating this issue because of my decision in *Starker v. United States,* 75–1 U.S.T.C. 87,142 (D.Or.) (Civil No. 74–133, April 23, 1975) (*Starker* I).

In the alternative, plaintiff contends that in 1967 the unfulfilled obligations of Crown did not have a fair market value, and therefore gain may be recognized only to the extent that cash or other property received in 1967 exceeded plaintiff's basis.

On the growth factor, plaintiff argues that the $74,887.91 added to the exchange balance is not interest and that it is not taxable as ordinary income. Plaintiff contends that the growth factor represented

est) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment."

the increased volume of plaintiff's timber between the date the timber was transferred to Crown and the dates plaintiff received properties in exchange.

Plaintiff also contends that even if the growth factor is treated as interest, it is taxable as ordinary income in 1969 because Crown filed a Form 1099 which declared that the interest was paid in 1969.

The government denies that it was an exchange of like-kind property held for investment or productive use in trade or business. It asserts that it was a sale and therefore not entitled to non-recognition treatment. The government also denies that collateral estoppel applies.

The government asserts that Crown's unfulfilled obligations under the Agreement had a fair market value in 1967 equal to the exchange balance and that plaintiff realized a gain equal to the difference between his basis and the exchange balance.

Two of the twelve parcels, the E. F. Timian property and the Bi-Mart building, were conveyed by Crown to Jean S. Roth, plaintiff's daughter. The parcels were never conveyed to plaintiff, and the government contends that the gain from these two parcels is not entitled to non-recognition treatment.

The government also contends that a third parcel, the Dr. Booth property, does not qualify for non-recognition treatment because plaintiff took cash rather than the property from Crown and Crown never had title to the property. The government asserts that Crown paid plaintiff the purchase price and gave plaintiff an assignment of its right to the property so that plaintiff could buy the property himself.

## CONCLUSIONS

■ Section 1031 was enacted to defer recognition of gain or loss when a taxpayer makes a direct exchange of property with another party. *Leo A. Woodbury,* 49 T.C. 180, 197 (1967), *acq.* 1969–2 Cum.Bull. XXV. Its object is to provide for non-recognition in transactions which do not change the nature of the investment. *Portland Oil Co. v. Commissioner of Internal Revenue,* 109 F.2d 479 (1st Cir. 1940). Section 1031 is strictly construed because it is an exception to the general rule that the entire gain or loss realized on disposition of property is recognized. *See* Treas.Reg. § 1.1002–1(b) (1962).[2] Plaintiff must bring himself squarely within the explicit provisions of the exception to qualify for non-recognition treatment. *Coleman v. Commissioner of Internal Revenue,* 180 F.2d 758, 760 (8th Cir. 1950).

In *Starker* I, I held that the taxpayers were entitled to non-recognition treatment under § 1031 because I believed that *Alderson v. Commissioner of Internal Revenue,* 317 F.2d 790 (9th Cir. 1963), required this result. I realized that *Alderson* was not directly in point, but at the time, I thought that the reasoning of *Alderson* required that result.

This case raises issues which were not raised in *Starker* I. Here, unlike *Starker* I, Crown transferred property to third persons, such as plaintiff's daughter, Jean S. Roth. In *Starker* I, the government argued that there was no exchange because there was no simultaneous transfer of property between Crown and the Starkers. Here, the government also argues that there is no like-kind exchange because plaintiff transferred his property in return for a promise which is the equivalent of cash.

Nevertheless, I recognize that many of the transfers here are identical to those in *Starker* I.

---

2. Treas.Reg. § 1.1002–1(b) provides:

"(b) Strict Construction of Exceptions From General Rule. The exceptions from the general rule requiring the recognition of all gains and losses, like other exceptions from a rule of taxation of general and uniform application, are strictly construed and do not extend either beyond the words or the underlying assump-

tions and purposes of the exception. Nonrecognition is accorded by the Code only it the exchange is one which satisfies both (1) the specific description in the Code of an excepted exchange, and (2) the underlying purpose for which such exchange is excepted from the general rule."

Plaintiff contends that the government is estopped from litigating whether his transfer to Crown qualifies for non-recognition treatment under § 1031 because of *Starker* I.

I have reconsidered my opinion in *Starker* I. I now conclude that I was mistaken in my holding as well as in my earlier reading of *Alderson.* Even if *Alderson* can be interpreted as contended by plaintiff, I think that to do so would be improper. It would merely sanction a tax avoidance scheme and not carry out the purposes of § 1031.

In *Alderson,* the taxpayer agreed to sell his property (Buena Park) through an escrow agreement to Alloy Die (Alloy). Before the sale was consummated, Alderson located a second parcel (Salinas) which he wanted to exchange for the Buena Park property. The escrow agreement was therefore amended to reflect this change. Alloy bought the Salinas parcel, and then, through the escrow, the parties exchanged deeds. The Court held that this transfer was entitled to non-recognition treatment under § 1031.

The taxpayer in *Alderson* did not give up his rights to the Buena Park property until Alloy had purchased and tendered a deed to the Salinas property. As a result of the amendment in the escrow, there was a reciprocal, simultaneous exchange of like-kind property.[3]

■ Here, plaintiff did not make either a reciprocal or a simultaneous exchange. He transferred all of his rights in the timberland to Crown in return for a promise, here called an exchange balance. At the time of the transfer, Crown did not own any of the twelve parcels which Crown either transferred or caused to be transferred to plaintiff or to plaintiff's nominees. When plaintiff made the Agreement, he did not know whether he would find acceptable property to exchange for his property or whether he would eventually be paid in cash.

Plaintiff makes much of the fact that the Agreement recites that he would be paid in cash only at Crown's option. I think this provision was not made in good faith and that it was inserted solely to make the transaction appear as an exchange and not a sale.

Plaintiff seeks to expand the definition of "exchange" to include not only reciprocal transfers, but also transactions in which the taxpayer transfers his property in return for a promise that he will receive like-kind property in the future.

When residential property is sold or exchanged for other residential property within one year, the gain is given non-recognition treatment under § 1034. When property is sold or exchanged under threat of requisition or condemnation, the gain is given non-recognition treatment under § 1033. These sections give non-recognition treatment to sales and reinvestment transactions in the limited circumstances specified in §§ 1033 and 1034.[4]

Section 1031 is in marked contrast to §§ 1033 and 1034. If Congress had intended to give non-recognition treatment to a taxpayer who disposed of a business or investment property for later acquired property of a like kind, it would have included sale and reinvestment provisions in § 1031. It would have used "sale or exchange" rather than "exchange" alone. Plaintiff ignores this distinction and reads both a sale and reinvestment provision into § 1031.

I find that plaintiff exchanged his property for a promise to convey like-kind property in the future, and I hold that plaintiff's transfer to Crown does not qualify for non-recognition treatment under § 1031.

There is no merit in plaintiff's contention that his gain may be recognized only to the extent that cash or other property received in 1967 exceeded his basis. After plaintiff transferred his timberland on May 31, 1967, Crown had an unfulfilled obligation to give him property or cash.

---

**3.** I do not decide that there must always be a simultaneous exchange to qualify for non-recognition treatment under § 1031. There may be such cases, but this is not one of them.

**4.** 26 U.S.C. §§ 1033 and 1034.

Crown is a giant corporation. There was no question of its ability to meet this obligation. This was a bankable asset.

I find that the fair market value of Crown's obligation is equal to the exchange balance of $1,502,500. I hold that the fair market value was realized under § 1001(b) in 1967. *See Warren Jones Co. v. C. I. R.,* 524 F.2d 788 (9th Cir. 1975).

The Agreement provided that plaintiff would be paid a growth factor of six per cent on the exchange balance and that this growth factor was to be added to the exchange balance "at the time of the last offsetting charge to [the plaintiff]."

■ In my view, the term "growth factor" was used in the Agreement to conceal the true nature of the transaction. It was really interest and should be taxed as ordinary income.

Crown filed a Form 1099 for 1969 which reported $74,887.91 in interest paid to the plaintiff. Plaintiff argues that even if the growth factor is interest, it is taxable in 1969 because Crown reported it as interest in that year and because the Agreement provides that the growth factor is to be added to the exchange balance at the time of the last offsetting charge.[5]

■ In spite of this report and the provision in the Agreement, the parties themselves treated these payments as having been received in 1967. The books show that interest was calculated on a daily basis, and $56,182.72 was credited to plaintiff's account in 1967. Crown kept a running total of the growth factor on its books under the heading "interest". When Crown purchased the exchange properties for the plaintiff, the purchase price of each parcel was first subtracted from the accrued interest. The principal was reduced only to the extent that the interest was insufficient to cover the cost of the property. This arrangement was advantageous to plaintiff because it permitted plaintiff to get additional interest.

The government is therefore entitled to a judgment dismissing plaintiff's action.

5. Ordinarily, the date of payment would not be significant, but here a claim for 1969 would be

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

time barred because there was a waiver filed for 1967, but not for 1969.