BENNIE D. RUTHERFORD AND MARIJON RUTHERFORD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
RUTHERFORD v. COMMISSIONER
Docket No. 1401-77.
United States Tax Court
T.C. Memo 1978-505; 1978 Tax Ct. Memo LEXIS 10; 37 T.C.M. (CCH) 1851-77; December 21, 1978, Filed Bennie D. Rutherford and Marijon Rutherford, pro se. J. Michael Brown, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Addition to tax
under section Year
Income tax
6653(a), I.R.C. 1954 [1]
1973
$ 2,714.25
$ 135.71
1974
1,188.78
1975
1,598.66
The issues for decision are whether petitioners are entitled to depreciation under section 167 and an investment credit under section 46 with respect to cattle acquired in an exchange. FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. Petitioners, husband and wife, were residents of Everman, Texas, at the time they filed their petition herein. They timely filed joint returns on a cash basis for the taxable years in question with the Internal Revenue Service Center, Austin, Texas. *12 At all times pertinent, Bennie D. Rutherford (Rutherford) was engaged in the trade or business of farming, including the raising of cattle. On November 1, 1973, Rutherford orally agreed with one Wardlaw that Wardlaw would transfer 12 half-blood heifers to Rutherford and that Rutherford would, at his own cost and expense, have such heifers artificially inseminated by the sperm from a registered bull and deliver to Wardlaw the first 12 three-quarter blood heifers born to the Wardlaw heifers at such time as they were weaned.A heifer is a young cow. Wardlaw delivered possession of the half-blood heifers to Rutherford on November 19, 1973.
The oral agreement was reduced to writing on April 22, 1974.Other than reciting a $10 consideration, it provided for no monetary payment by Rutherford to Wardlaw except that, in case any half-blood heifer delivered by Wardlaw was subsequently determined to be barren or was unable to conceive, Rutherford agreed to sell such heifer or heifers at the market price upon due notice to Wardlaw and to pay over the sales price to Wardlaw. The agreement further provided that if any half-blood or three-quarter blood heifer was lost due to theft, death, or *13 otherwise prior to the delivery to Wardlaw of all 12 three-quarter blood heifers by Rutherford, the obligation of Rutherford to deliver 12 three-quarter blood heifers would attach to heifers weaned from the remaining half-blood heifers. Upon the fulfillment of Rutherford's obligations under the agreement, Wardlaw was to deliver all registration papers for the half-blood heifers "conveying good and indefeasible title" thereto. Rutherford's obligations to Wardlaw were secured by a collateral agreement, dated April 22, 1974, which granted Wardlaw "a security interest" in the half-blood heifers previously delivered by him to Rutherford and provided that Wardlaw could take action to recover such heifers in the event of Rutherford's default. At the time of the transfer of the half-blood heifers to him, Rutherford established his cost for purposes of depreciation and the investment credit at $3,000, representing his judgment as to the then fair market value of each three-quarter blood heifer that he was obligated to deliver to Wardlaw (or a total of $36,000). In November 1973, the fair market value of each such heifer was $2,759. The half-blood heifers were artificially inseminated *14 during the summer of 1974 and Rutherford delivered threequarter blood heifers to Wardlaw as follows: 1975, four; 1976, three; 1977, five. The fair market value of each such heifer at the time of delivery was approximately [2] as follows: 1975, $349; 1976, $295; 1977, $516. Petitioners deducted as expenses the cost of producing the three-quarter blood heifers. Petitioners had a zero basis in such heifers. OPINION The critical issue is the basis to Rutherford of the half-blood heifers transferred to him by Wardlaw. Petitioners contend that such basis is the fair market value, as of November 1973, of the 12 three-quarter blood heifers which Rutherford was obligated to deliver to Wardlaw. Respondent contends that petitioners had no basis because they paid for the half-blood heifers in property, i.e., three-quarter blood heifers, which they raised themselves and in respect of which they had no costs. We agree with respondent, although for a *15 different reason than advanced by him on brief. With respect to petitioners' contention, Rutherford's obligation to deliver three-quarter blood heifers was dependent upon the success of the contemplated artificial insemination. As such, it was wholly contingent and speculative in November 1973. Such an obligation cannot be included in the determination of basis. Cf. Columbus & Greenville Railway Co. v. Commissioner,42 T.C. 834, 848-849 (1964), affd. per curiam 358 F.2d 294 (5th Cir. 1966); Albany Car Wheel Co. v. Commissioner,40 T.C. 831 (1963), affd. per curiam 333 F.2d 653 (2d Cir. 1964). See Denver & Rio Grande Western R.R. Co. v. United States,505 F.2d 1266, 1269-1270 (Ct. Cl. 1974). [3] On the basis of the foregoing, any deduction for depreciation or allowance of an investment credit for 1973 and 1974 is clearly precluded. Rutherford did deliver four three-quarter blood heifers in 1975. We do not agree that, simply *16 because Rutherford had no basis in the heifers delivered, petitioners are necessarily not entitled to some allowance for depreciation and for an investment credit. We think that this issue turns upon whether the transaction between Wardlaw and Rutherford constitutes a taxable or nontaxable exchange. Where a taxable exchange of property is involved, a taxpayer may have a gain or loss on the exchange and thereby acquire a basis in the property he receives. See Philadelphia Park Amusement Co. v. United States,126 F. Supp. 184, 188-189 (Ct. Cl. 1954); Moore-McCormack Lines, Inc. v. Commissioner,44 T.C. 745 (1965). See United States v. Davis370 U.S. 65, 72 (1962). In our opinion, the transaction between Wardlaw and Rutherford is controlled by section 1031(a), which provides as follows: SEC 1031(a). Nonrecognition of Gain or Loss from Exchanges Solely in Kind.--No gain or loss shall be recognized if property held for productive use in trade or *17 business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.
As our findings of fact show, Rutherford was engaged in the trade or business of raising livestock. There is no question but that cattle are considered property for the purposes of section 1031. [4] At least under the circumstances of this case, we do not consider the fact that the three-quarter blood heifers to be delivered by Rutherford were not in existence at the time of the transfer of the half-blood heifers by Wardlaw precludes the applicability of section 1031(a).Cf. Coastal Terminals, Inc. v. United States,320 F. 2d 333, 337 (4th Cir. 1963); Biggs v. Commissioner,69 T.C. 905, 916 (1978); Coupe v. Commissioner,52 T.C. 394 (1969); Woodbury v. Commissioner,49 T.C. 180, 197-199 (1967); J. H. Baird Publishing Co. v. Commissioner,39 T.C. 608, 618 (1962). *18 [5] But see Starker v. United States,432 F. Supp. 864 (D. Ore. 1977), where we note that, unlike the situation herein, an ultimate obligation to pay cash was involved. We hold that the transaction between Wardlaw and Rutherford constituted a nontaxable exchange under section 1031(a). Under these circumstances, Rutherford's basis for the half-blood heifers acquired from Wardlaw is his basis in the three-quarter blood heifers delivered to Wardlaw in exchange. Section 1031(d). As a consequence, the fair market value of the four heifers delivered to Wardlaw in 1975 is without significance. We also note that sections 1031(a) and (d) are equally applicable to the taxable years 1973 and 1974, although there is an additional ground for holding for respondent in respect of those years. See pp. 5-6, supra.
We hold that *19 petitioners are not entitled to a deduction for depreciation or for an investment credit for the taxable years 1973, 1974, or 1975 in respect of the half-blood heifers acquired from Wardlaw. Due to concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years at issue.↩
2. The record does not reveal the time of delivery during each of the three years. The fair market values indicated are based upon the highest sales prices during each of the years reduced by 30 percent, as stipulated by the parties.↩
3. See also Southers v. Commissioner,T.C. Memo. 1970-242↩.
4. The exception contained in section 1031(e)↩, which excludes livestock of different sexes, is inapplicable because the livestock exchanged herein was of the same sex. 5. See also Rutland v. Commissioner,T.C. Memo. 1977-8↩, n. 11.